ANTHONY E. LOMAX, JR.,         )
        Petitioner,          )
                              )
        v.               )        Civil Action No. 13-177 Erie
THE ATTORNEY GENERAL,       )        Magistrate Judge Susan Paradise Baxter
et al.,                   )
        Respondents.      )

## **OPINION**[1]

Presently before the Court is a petition for a writ of habeas corpus filed by Petitioner, state prisoner Anthony E. Lomax, Jr., pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied. A certificate of appealability also is denied.

## **I.**

### **A.**    **Background**[2]

On June 29, 2008, the Erie Police were called to a local residence for a report of a sex crime involving a four-year-old female, who will be referred to herein as "A.O." The victim's mother told the responding officer that she had invited Petitioner into her residence the night before and that they had been drinking. The mother fell asleep during Petitioner's visit, and when she awoke around 2:00 a.m. Petitioner was gone. A.O. heard that her mother was up and approached her and told her that while the mother was sleeping, Petitioner entered A.O.'s bedroom and sexually assault her.

On June 30, 2008, A.O. was interviewed by Michele Peterson at the Children's Advocacy Center. A.O. described the sexual assault to Peterson in a videotaped interview. That same day, Petitioner

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]     Respondents have filed a hardcopy of the state court record ("SCR"). Most of the documents are indexed and are numbered on the bottom right-hand side and shall be cited as "SCR No. __ ".

arrived at the police station for an interview. Detective Sergeant Barber gave him his <u>Miranda</u> rights. Petitioner confessed to Det. Sgt. Barber that A.O.'s allegations against him were true. In his confession, which was videotaped, Petitioner stated that after A.O.'s mother fell asleep, he went into A.O.'s bedroom and told her that if she took off her clothes he would bring her candy. He admitted that he digitally penetrated A.O.'s vagina and penetrated her anus with his penis. Petitioner said that he turned away from A.O. before he ejaculated. (SCR No. 1).

Petitioner was arrested and charged with rape of a child (Count 1), deviate sexual intercourse with another person who is less than 13 years of age (Count 2), aggravated indecent assault (Count 3) and corruption of the morals of a child (Count 4). Following a hearing on the use of hearsay testimony at trial in accordance with Pennsylvania's Tender Years Statute, 42 Pa.C.S. § 5985.1, the trial court held that if A.O. testified at the trial, it would permit the introduction of: (1) statements that A.O. made to her mother and/or aunt on June 29, 2008; and, (2) statements A.O. made to the forensic nurse, Rhonda Henderson, who examined A.O. on June 30, 2008. (SCR No. 8). The trial court also held that the videotaped statement that A.O. gave to Michelle Peterson of the Child Advocacy Center on June 30, 2008, was admissible. (SCR No. 9).

On November 4, 2008, the Petitioner pleaded guilty to rape of a child (Count 1) and aggravated indecent assault (Count 3). On March 3, 2009, he appeared before the trial court for sentencing and for a determination of whether he should be classified as a sexually violent predator. Prior to that hearing, Petitioner had filed with the court a *pro se* request to withdraw his guilty plea. Petitioner's trial counsel, Daniel J. Brabender, Esquire, who at the time was an Assistant Public Defender, explained to the judge at that hearing that he did not believe that he could ethically file a motion to withdraw Petitioner's guilty plea given the strength of the evidence that would be introduced against him if Petitioner proceeded to trial. Counsel also explained that, in addition to the confession he gave to Det. Sgt. Barber on June 30,

2

2008, Petitioner admitted on other occasions that he had committed the charged offenses. (Mar. 3, 2009 Hr'g Tr. at 27-30).[3]

The court instructed Petitioner's counsel to make an oral motion to withdraw Petitioner's guilty plea. Petitioner spoke on his own behalf and explained that he wanted to withdraw his plea because he believed that A.O.'s mother had misreported where they had met "and the time of which I left her house[.]" (Id. at 30). He also stated that A.O.'s mother did not know that there was "another person" in the house when he left her home in the early morning hours of June 29, 2008. (Id.)

Pennsylvania law provides that the decision regarding whether to accept a defendant's pre-sentence motion to withdraw a guilty plea is left to the discretion of the trial court. (SCR No. 45, Commonwealth v. Lomax, No. 827 WDA 2009, slip op. at 3 (Pa.Super.Ct. Feb. 1, 2010) ("Lomax I") (citing Commonwealth v. Broaden, 980 A.2d 124, 128 (Pa.Super.Ct. 2009)). "[W]hen a motion to withdraw a guilty plea is made prior to sentencing, the motion should be granted where the defendant has offered a 'fair and just reason.'" (Id. (citing Commonwealth v. Tennison, 969 A.2d 572, 576 (Pa.Super.Ct. 2009) (additional citations omitted)).

The court denied Petitioner's pre-sentence motion to withdraw his guilty plea. It held that Petitioner did not provide a sufficient reason to justify withdrawal and noted that "there's been no assertion of innocence by this defendant. He takes issue with some of the facts in this case, but he entered a knowing, voluntary, intelligent plea in this case, and in so doing, he waived everything except the jurisdiction of the Court, voluntariness of the plea, and legality of the sentence. There is no reason that would justify withdrawal of the plea at this time." (Mar. 3, 2009 Hr'g Tr. at 31-32). The court further explained: "In addition, there is some prejudice involved to the Commonwealth here. The victim

---

[3]        The transcript for the March 3, 2009, hearing contains two sets of page numbers. The page number cited herein is to the number that appears in the center bottom of the page.

in this case was four years old at the time of the offenses, I believe now is six years old, so it's a very tender years and it would be prejudicial to put this child through a trial after she and her family have been advised of the defendant's plea in the case and they would have to turn around and have to testify at trial." (Id.)

At the conclusion of the March 3, 2009, hearing the court found that Petitioner was a sexually violent predator and sentenced him to serve an aggregate sentence of 240-480 months of imprisonment. In his direct appeal, Petitioner claimed that the trial court erred when it denied his request to withdraw his guilty plea. (SCR No. 45, Lomax I, No. 827 WDA 2009, slip op. at 2). In a Memorandum dated February 1, 2010, the Superior Court held that the trial court did not err and it affirmed Petitioner's judgment of sentence. (Id. at 7).

On November 16, 2010, the Pennsylvania Supreme Court denied a petition for an allowance of appeal. Petitioner's judgment of sentence became final on or around February 14, 2011, upon expiration of the time to file a petition for writ of certiorari with the U.S. Supreme Court. Gonzalez v. Thaler, — U.S. — , 132 S.Ct. 641, 653-56 (2012) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review); Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (same).

In the meantime, on January 10, 2011, Petitioner had submitted into his prison mailing system for filing a *pro se* motion for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.Cons.Stat. § 9541 *et seq.* (SCR No. 57). The PCRA court appointed William J. Hathaway, Esq., to represent him and counsel filed an amended PCRA petition. (SCR No. 60). Therein, Petitioner sought to withdraw his guilty pleas based on the involvement in his case of Rhonda Henderson. She was the nurse who examined A.O. and issued a medical report in which she concluded that A.O. had injuries consistent with the reported abuse. After Petitioner was sentenced, the Erie County District Attorney's

4

Office discovered that Henderson had made false or exaggerated medical findings in several sexual assault cases in Erie County. In response, the Commonwealth hired Mary Carrasco, M.D., to review the report Henderson prepared in Petitioner's case. After that review, Dr. Carrasco issued her own report in which she agreed with Henderson's assessment of A.O. in a number of respects, but, unlike Henderson, Dr. Carrasco did not find any anal or perianal lesions or injuries. She also did not find any superficial tears of the vaginal area. In her letter to the District Attorney, Dr. Carrasco wrote: "Please note that my assessment relates to the physical findings only. Also note that the absence of physical findings does not rule out sexual abuse, in fact most cases of sexual abuse have normal exams."[4]

Based on Dr. Carrasco's findings that contradicted Henderson's report, Petitioner argued in his PCRA case that he was entitled to withdraw his guilty plea. The PCRA held an evidentiary hearing on June 2, 2011, at which Petitioner testified.

On June 10, 2011, the PCRA court issued an Opinion in which it denied Petitioner's request for PCRA relief. (SCR No. 70, Commonwealth v. Lomax, No. 1819 of 2008, slip op. (C.P. Erie June 10, 2011) ("Lomax II")). The court explained that since the case was in the post-sentence state, Petitioner was required to demonstrate "manifest injustice" in order to be entitled to withdraw his guilty pleas. (Id. at 4). See also 16A Pennsylvania Criminal Practice § 25:6, WestlawNext (database updated Sept. 2015) (collecting cases) ("Since allowing the withdrawal of a guilty plea after sentencing would allow the defendant to use a guilty plea as a sentence testing device, a defendant must show prejudice on the order of *manifest injustice before a guilty plea may be withdrawn after sentencing*.") (emphasis added). The court determined that Petitioner failed to demonstrate a manifest injustice that would justify granting him relief.

---

[4]    Dr. Carrasco's report and her letter to the District Attorney is attached to the amended PCRA petition that Hathaway filed. (SCR No. 60). Petitioner also filed those documents on this Court's docket under seal at ECF No. 20-2.

Petitioner, through Hathaway, filed an appeal with the Superior Court. On January 23, 2012, the

Superior Court issued a Memorandum in which it affirmed the PCRA court's decision. (SCR No. 84,

Commonwealth v. Pennsylvania, No. 1104 WDA 2011, slip op. (Pa.Super.Ct. Jan. 23, 2012) ("Lomax

III"). It held:

> Appellant maintains that the court erred in denying his petition seeking to withdraw his
> guilty pleas because those pleas were not knowing, intelligent, and voluntary. Appellant
> claims that in deciding to plead guilty, he and his counsel, Attorney Brabender,
> significantly relied on Nurse Henderson's tainted medical report.[2] Appellant explains that
> this reliance was evidenced by the fact that at their November 3, 2008 meeting, Attorney
> Brabender "made direct reference to the medical report of [Nurse] Henderson as a
> prominent basis and factor in his advocating for the entry of guilty pleas. [Petitioner] then
> entered the pleas the very next day, which election he denoted as being a product of
> counsel's position and his own consideration of the medical report of [Nurse]
> Henderson." Appellant's Brief at 12. Accordingly, Appellant avers that "the
> overwhelming conclusion that can be derived is that [Nurse] Henderson['s] medical
> report had a significant influence on both defense counsel's and Appellant's posture
> toward this case and the election to enter guilty pleas." Id. As such, he claims that he
> should have been permitted to withdraw those pleas.
>
>> [2] We note that Appellant also devotes a large portion of his argument to
>> addressing why Nurse Henderson's report should be considered falsified and/or
>> inaccurate. However, neither the PCRA court nor the Commonwealth disputes
>> that Nurse Henderson's report was invalid.
>
> We conclude that Appellant mischaracterizes the evidence presented at his PCRA
> hearing, namely his own testimony. Appellant did not testify that Attorney Brabender
> advised him to accept the Commonwealth's plea offer based on Nurse Henderson's report.
> In fact, Appellant stated only that Attorney Brabender told him "that he didn't want to go
> to trial" and counseled Appellant "to take the plea." PCRA Hearing, 6/2/11, at 18.
> Moreover, when first asked if Attorney Brabender referred to Nurse Henderson's report in
> providing that advice, Appellant answered "no." Id. While Appellant subsequently
> confirmed that Attorney Brabender expressed "particular concern" about the contents of
> the report, Appellant could not "recall any specific language that he used in terms of
> assessing that medical report." Id. Additionally, when asked to what extent Appellant
> predicated his decision to plead guilty on Attorney Brabender's counsel, Appellant
> replied, "*mostly* all of it." Id. at 19 (emphasis added).
>
> Appellant testimony at the PCRA hearing was hardly definitive proof that
> Attorney Brabender relied on Nurse Henderson's report as a "prominent basis" for
> advising Appellant to plead guilty, as Appellant now claims. Furthermore, Appellant's
> statement that he "mostly" relied on Attorney Brabender's advice in deciding to plead

6

guilty indicates that he also had other considerations in mind when reaching that decision. Lastly, it is important to acknowledge that prior to pleading guilty, Appellant underwent a thorough colloquy. During that colloquy, he was advised, *inter alia*, that by entering such a plea, he was admitting that he was guilty. N.T. Plea Hearing, 11/4/08, at 2. Appellant stated that he had no questions. Id. at 4. Then, after the charges were read and his sentences explained, Appellant again stated that he wanted to plead guilty and that he had no questions. Id. at 5. Therefore, [Petitioner's] argument in support of his first issue fails to convince us that he was entitled to the post-sentence withdrawal of his guilty pleas.

Next, Appellant contends that in denying his request to withdraw his pleas, the PCRA court improperly relied on the fact that he confessed prior to Nurse Henderson's report being completed. He maintains that "the prior confession and the ensuing entry of pleas are totally distinct and discrete stages of this case and lack any nexus despite the analysis of the [PCRA] [c]ourt as to the prior confession having direct relevance and bearing upon the integrity of the entry pleas." Id. at 14.

We disagree. The PCRA court properly determined that, in order for [Petitioner] to withdraw his plea post-sentence, he had to establish that a manifest injustice would result if that withdrawal were denied. In Commonwealth v. Broaden, 980 A.2d 124, 129 (Pa.Super. 2009), we explained:

> "[P]ost-sentence motions for withdrawal are subject to higher scrutiny
> since courts strive to discourage entry of guilty pleas as sentence-testing
> devices." A defendant must demonstrate that manifest injustice would
> result if the court were to deny his post-sentence motion to withdraw a
> guilty plea. "Manifest injustice may be established if the plea was not
> tendered knowingly, intelligently, and voluntarily." In determining
> whether a plea is valid, the court must examine the totality of
> circumstances surrounding the plea. A deficient plea does not *per se*
> establish prejudice on the order of manifest injustice.

Id. at 129 (citations omitted).

As discussed, *supra* the PCRA court concluded, and we agree, that the discrediting of Nurse Henderson's report effectively amounted to after-discovered evidence. Thus, pursuant to [Commonwealth v. Peoples, 319 A.2d 679 (Pa. 1974)], in order for Appellant to be entitled to withdraw his pleas based on this new evidence, he was required to establish that such evidence would warrant the grant of a new trial had he proceeded to trial in the first place. See Peoples, 319 A.2d at 681. To be granted a new trial based on after-discovered evidence,

> [Defendant] must demonstrate that the evidence: (1) could not have been
> obtained prior to the conclusion of the trial by the exercise of reasonable
> diligence; (2) is not merely corroborative or cumulative; (3) will not be

used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

Commonwealth v. Padillas, 997 A.2d 356, 362 (Pa.Super. 2010) (citations omitted). We went on to explain in Padillas that this "test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for new trial to be warranted." Id. (citations omitted).

Presently, we interpret the PCRA court's analysis as concluding that Appellant failed to meet the fourth prong of the above-stated test. We agree with that determination. In assessing if after-discovered evidence "is of such a nature and character that it would likely compel a different verdict if a new trial is granted[,] … a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." Id. at 365 (citations omitted; emphasis added). Here, the PCRA court concluded that the overall strength of the Commonwealth's evidence against Appellant was strong, even absent Nurse Henderson's fabricated medical report. Excluding the report, the entirety of the evidence against Appellant, which presumably would have been presented by the Commonwealth had he proceeded to trial, consisted of the victim's testimony, the corroborating testimony of Michelle Peterson regarding what the victim told her during their interview, and, most importantly, Appellant's confession to police. We agree with the PCRA court that this evidence was compelling, and conclude that it would have been more than sufficient to support a jury's verdict convicting Appellant of the offenses with which he was charged. This Court has stated that "it is well-established that 'the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses.'" Commonwealth v. Castelhun, 889 A.2d 1228, 1232 (Pa.Super. 2005) (citations omitted). In this case, not only would the victim have testified, but her testimony would have been corroborated by Appellant's confession and Ms. Peterson's testimony. Therefore, Appellant has failed to prove that the omission of Nurse Henderson's report would have resulted in a different verdict had his case proceeded to trial.

In sum, based on the totality of the circumstances, we conclude that the PCRA court properly determined that Appellant failed to establish manifest injustice warranting the post-sentence withdrawal of his guilty pleas. Accordingly, we affirm the PCRA court's order denying his petition for post-conviction relief.

(SCR No. 84, Lomax III, No. 1104 WDA 2011, slip op. at 6-11) (bracketed text in original, additional footnotes omitted). On June 20, 2012, the Pennsylvania Supreme Court denied Petitioner's subsequent petition for allowance of appeal.

On June 18, 2013, Petitioner submitted into his prison mailing system for filing with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [ECF No. 6]. Under this statute, "[t]he

Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. Id. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Petitioner carries the burden of proving he is entitled to the writ. Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

Petitioner raises three claims for relief. In **Claim One**, he contends that his confession was coerced and that his trial counsel should have moved to suppress it on that basis. In **Claim Two**, he raises the same claim that he litigated in his PCRA proceeding. In **Claim Three**, he contends his trial counsel was ineffective at the sentencing hearing when he expressed to the trial court his reservations for filing a motion to withdraw Petitioner's guilty plea. Respondents have filed their answer [ECF No. 15], to which Petitioner filed a reply [ECF No. 20] (which he called a memorandum).

**B.**      **Discussion**

     **1.**      **Claims One and Three Are Denied Because They Are Procedurally Defaulted**

A state prisoner seeking federal habeas relief under 28 U.S.C. § 2254 must first exhaust his claims in the state court system. This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). See also O'Sullivan v. Boerckel, 526 U.S. 838, 842-49 (1999).

> [It is] principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740 (1886)]. Because "it would be unseemly in our dual system of

9

government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Rose v. Lundy, 455 U.S. 509, 517 (1982) (footnote omitted), abrogated on other grounds by Rhines v. Weber, 544 U.S. 269 (2006).

Importantly, in order to exhaust a claim "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Superior Court of Pennsylvania either on direct or PCRA appeal. See, e.g., Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Petitioner did not exhaust Claims One or Three. [ECF No. 6 at 5-7, 9].[5] Because he did not, those claims are now procedurally defaulted. See, e.g., Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). See also Rolan v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012) ("Procedural default occurs when a claim has not been fairly presented to the state courts (*i.e.*, is unexhausted) and there are not additional state remedies available to pursue[.]"). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism,"

---

[5]    Petitioner contends that he raised Claim One in his PCRA proceeding but that Attorney Hathaway "abandoned the issue as he believed it was not relevant[.]" [ECF No. 6 at 6]. Although Petitioner contends that Hathaway "ignored" Claim Three, he also makes the contrary contention that he raised Claim Three during his PCRA proceeding but that it was not addressed by Superior Court because the PCRA court failed to rule upon it. [ECF No. 6 at 9]. The record establishes that this latter contention is not true. The amended PCRA petition and Petitioner's appellate brief are part of the state court record that Respondents submitted to this Court, and those documents establish that Petitioner did not exhaust Claim Three. Petitioner's contention that Hathaway "abandoned" Claim One and "ignored" Claim Three will be addressed *infra* in the discussion regarding why Petitioner cannot overcome the default of his claims.

Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner failed to

raise it in compliance with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000);

Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.

A petitioner whose federal habeas claim is procedurally defaulted can overcome the default,

thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some

objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and

"actual prejudice." See, e.g., Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488,

494 (1986). In Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012), the Supreme Court held for the first

time that in states like Pennsylvania, where state law requires that claims of ineffective assistance of trial

counsel be raised in an initial-review collateral proceeding (such as the PCRA), a petitioner may be able

to establish "cause" sufficient to overcome a procedural default of "a substantial claim of ineffective

assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that

proceeding was ineffective [under the standards of Strickland v. Washington, 466 U.S. 668 (1984)]."

132 S.Ct. at 1320.[6]

Petitioner contends that, in accordance with Martinez, he can overcome the default of

Claims One and Three because his PCRA counsel, Attorney Hathaway, was at fault for not raising them.

His argument has not merit. The holding in Martinez does not provide Petitioner with an avenue to

establish "cause" for his default for several reasons. First, Hathaway was charged with exercising his

professional judgment in deciding which claims to litigate in Petitioner's PCRA proceeding. He also had

an obligation under Rule 3.1 of Pennsylvania's Rules of Professional Conduct not to raise frivolous

claims. See, e.g., Commonwealth v. Chmiel, 30 A.3d 1111, 1190-91 (Pa. 2011). As Petitioner's

---

[6]    The Supreme Court based its decision on what it determined to be an equitable right to seek relief from a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to counsel in initial-review collateral proceedings such as the PCRA. Martinez, 132 S.Ct. at 1313-21.

representative, Hathaway's informed decision not to raise the claims at issue is not the type of conduct that is "external to the defense" such that it satisfies the "cause" requirement. Second, if Petitioner was dissatisfied with Hathaway because he would not raise all of the claims that Petitioner wished to litigate, Petitioner should have moved to have Hathaway replaced or waived his right to PCRA counsel and proceeded *pro se*. Third, Petitioner cannot establish "cause" to overcome his default by merely demonstrating that he asked Hathaway to litigate his defaulted claims and that Hathaway declined to do so. Martinez requires more. Specifically, it requires that a petitioner seeking to establish "cause" for the default of his ineffective assistance of trial counsel claims demonstrate that those claims are "substantial," which is "analogous to the substantiality requirement for a certificate of appealability." Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014) (quoting Martinez, 132 S.Ct. at 1318-20). Petitioner has not demonstrated that any of the contentions that he raises in the defaulted Claims One and Three are "substantial" such that they fall within Martinez's very limited rule.

Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). Where the petitioner pleaded guilty (as in the instant case), he also must establish his actual innocence not only of the count to which he pleaded guilty, but also the other charges the government excused in the plea bargaining process. Bousley v. United States, 523 U.S. 614, 623-24 (1998). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schulp, 513 U.S. at 316. Despite the fact that Petitioner confessed to sexually

12

assaulting A.O. and pleaded guilty, he now claims that he is innocent.[7] He has fallen far short of presenting evidence from which this Court could conclude that this case is one of the rare cases in which the fundamental miscarriage of justice rule is implicated.

Based upon all of the foregoing, Claims One and Three are denied because they are procedurally defaulted.

### 2.    Claim Two Is Denied On the Merits

The only claim that this Court can review on the merits is Claim Two, which is the claim that Petitioner raised to the Superior Court in his PCRA appeal. The Supreme Court of the United States has strictly limited the circumstances under which a guilty plea may be attacked on collateral review, noting: "It is well settled that a voluntary and intelligent plea of guilt made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley, 523 U.S. at 621 (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)). "Indeed, 'the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.'" Id. (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). "Where, as here, a defendant is represented by counsel during the plea process and enters his pleas upon the advice of counsel, the

---

7       In his petition, Petitioner claims that he is innocent. In addition, in September 2015, he submitted a filing with this Court in which he again proclaimed his innocence and contended that he had recently learned that another individual "was arrested in 2009 or 2010" for allegedly sexually assaulting A.O. in 2007. [ECF No. 23 at 1]. Since Petitioner admitted that he sexually assaulted A.O. on June 29, 2008, the allegation that another person was arrested for assaulting her in 2007 does not prove Petitioner's innocence. In addition, he provided no support for his allegations or explained why he did not raise the matter with the state court in another PCRA petition. Pennsylvania law permits the filing of another PCRA petition within 60 days of the discovery of new evidence that was "unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.Cons.Stat. § 9545(b). It is also important to note that a stand-alone claim of actual innocence is not cognizable in federal habeas. Albrecht v. Horn, 485 F.3d 103, 121-22 (3d Cir. 2007) (citing Herrera v. Collins, 506 U.S. 390 (1993)). See also BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 1:60, WestlawNext (database updated June 2015) ("A freestanding claim of actual innocence in a non-capital case based on newly discovered evidence is not a ground for habeas corpus relief." (citing Herrera, additional citations omitted)). Based upon the Herrera decision, the Third Circuit Court has held that in non-capital cases such as this case: "It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) (quoting Herrera, 506 U.S. at 400). See also Albrecht, 485 F.3d at 121-22; Han Tak Lee v. Glunt, 667 F.3d 397 (3d Cir. 2012) (where the petitioner's claims were based on a due process violation, not a claim of actual innocence).

voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). See also Tollett v. Henderson, 411 U.S. 258, 267-68 (1973). In an attempt to get around the limitation his guilty plea has on his availability to receive relief on collateral review, Petitioner contends that his pleas were not knowingly and intelligently entered in violation of his due process rights because he made them prior to Nurse Henderson's report being discredited.

### (a)     Standard of Review

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended 28 U.S.C. § 2254 and "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations. AEDPA reflects the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Pinholster, 131 S.Ct. at 1398 (internal quotation marks and citations omitted).

Because the Superior Court denied Claim Two on the merits in Lomax III, this Court's review of that claim is very limited. It is not for this Court to decide whether the Superior Court's decision was right or wrong. Rather, under AEDPA's standard of review, codified at 28 U.S.C. § 2254(d), it is Petitioner's burden to show that the Superior Court's adjudication:

14

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

### (b)    Petitioner Has Not Overcome AEDPA's Standard of Review

A state court decision is "contrary to … clearly established Federal law, as determined by the Supreme Court[,]" 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406. Petitioner has not established either circumstance. Therefore, he has not overcome AEDPA's standard of review set forth in the "contrary to" clause of § 2254(d)(1).

Petitioner's burden under the "unreasonable application of" clause of § 2254(d)(1) is also difficult to meet. The Supreme Court has advised:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See [Lockyer v. Andrade, 538 U.S. 63, 75 (2003)].
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). **It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further…. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.**

15

Harrington, 562 U.S. at 102-03 (parallel citations omitted) (emphasis added).

This Court cannot conclude that the Superior Court's adjudication of Claim Two "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 102-03. Therefore, Petitioner has not established that the Superior Court's decision was an "unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court[.]" 28 U.S.C. § 2254(d)(1).

The only remaining question for this Court is whether Petitioner has established that the Superior Court's adjudication of Claim Two "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In making that determination, this Court is mindful that in all habeas cases brought pursuant to 28 U.S.C. § 2254, the federal court must presume that the state court's factual determinations are correct and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Under § 2254(d)(2)'s "unreasonable determination of facts" clause, the test:

> is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, — U.S. — [ ], 131 S. Ct. 1388, 1401-03 (2011).

Rountree v. Balicki, 640 F.3d 530, 537-38 (3d Cir. 2011) (parallel citations omitted). More recently, the Supreme Court has explained that "[w]e have not defined the precise relationship between § 2254(d)(2)

and § 2254(e)(1) …. For present purposes, it is enough to reiterate 'that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Burt v. Titlow, — U.S. — , 134 S.Ct. 10, 15 (2013) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)).

Petitioner has not met his burden of establishing that the Superior Court's decision to deny Claim Two "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Indeed, in the documents that he submitted to this Court Petitioner admitted that, as the state court found, he gave his confession to Det. Sgt. Barber before Nurse Henderson had conducted her exam of A.O. [ECF No. 20-1 at 3]. Thus, Petitioner's confession was not influenced by that later-discredited exam and that confession, along with the other evidence of his guilt (excluding Nurse Henderson's report) was of such a quality that there is no basis for this Court to disturb the Superior Court's decision that Petitioner was not entitled to relief on Claim Two.

Based upon all of the foregoing, Claims Two is denied on the merits.

## C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Id.</u> Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability is denied.

## II.

For the reasons set forth above, the petition for a writ of habeas corpus is denied and a certificate of appealability is denied on all claims.

An appropriate Order follows.

/s/ Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
United States Magistrate Judge

Dated: February 10, 2016

cc:    Notice by ECF to counsel of record and by U.S. mail to Petitioner at his address of record